UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WALTER G. MATTHEWS,
        Plaintiff,

v.                                         Case No. 16-CV-155

MARY SAUVEY, et al.,
        Defendants.

## AMENDED COMPLAINT

This is a civil action authorized by 42 U.S.C. section 1983 to redress the deprivation, under color of the state law, pursuant to Monroe v. Pape 365 W.S. 167(1961). of the right secured by the constitution of the United States. The court has jurisdiction under § 28 U.S.C. section 1331 and 1343(a)(3).

Plaintiff Matthews moves to amend complaint, pursuant to Rule 15 (a) and 19(a), Fed. R. Civ. P. Also in relation to moves this court to add new legal claims, pursuant to § 28 U.S.C. 1362. see: City of Chicago International College of Surgeons , 552 U.S. 156, 173 -74, 118 S.CT. 523(1997).

Plaintiff Matthews seeks declaratory relisf to § 28 U.S.C. section 2201 and 2202. Plaintiff Matthews seeks compensatory and punitive damages.

The Eastern District of Wisconsin is an appropriate venue under § 28 U.S.C. section 1915(a) because it is where events giving rise to this claim occurred.

1

## II. PLAINTIFF

1. The Plaintiff Walter G. Matthews, is and was at all times incarcerated at GreenBay Correctional Institution during the events described in this complaint.

## III. DEFENDANTS

2. Defendant DR. Mary Sauvey, is and was at all times the medical Doctor at Green Bay Correctional Institution during all times of events as said in this complaint.

3. Defendant, **Mary Alsteen**, is and was at all times the registered nurse at GreenBay Correctional Institution during all times of events as said in this complaint.

4. Defendant, **Kaite Bruckner,** was at all times assigned as a Nurse Practitionor at GreenBay Correctional Institution during all times of events as said in this complaint.Meanwhile, this Defendant is no longer employed as a Nurse Practitioner for] GreenBay Correctional Institution.

5. Defendant, **Yana Puisch**, is and was at times ranked as a Security Supervisior at GreenBay Correctional Institution during the time of events as said in this complaint.

6. Defendant, **Jean Lutsey,** is and was at all times employed at GreenBay Correctional Institution as Health Service Manager during the time of events as said in this complaint.

7. Defendant, **Karen Wery,** is and was at all times employed at GreenBay Correctional Institution as Sergeant during the time of events as said in this complaint.

## IV. FACTS

8. In December of 2014 on the 20th day, Plaintiff Matthews was playing basketball, when he felt a "pop" in his lower right leg, followed by severe pain.

9. Plaintiff Matthews was escorted to Health Service Unit in a wheelchair.

10. Upon arrival at the Health Service UNit(HSU), plaintiff Matthews was examined by Defendant Alsteen.

11. Plaintiff Matthews informed Defendant Alsteen he was experiencing serious pain in the Achilles area, unable to bear weight and noticed that his ankle was swollen and had difficulty flexing the affected foot.

12. Plaintiff Matthews requested Defendant Alsteen to refer him to have a magnetic resonance imaging(MRI). Defendant Alsteen declined.

13. In Defendant Alsteen's nursing encounter protocol report she documented MR.Matthewss reporting of injury in the contrary. Mr.Matthews reported swelling as he observed and his inability to flex affected foot without pain.

14. Defendant Alsteen's intervention provided Mr. Matthews with crutches, ice, extra pillow, rest, lower bunk, and 200mg ibbuprofen. Meanwhile, Defendant Alsteen medically advised Mr. Matthews he did not suffer from a ruptured Achilles and that his leg injury will improve in time.

15. In conclusion of Defendant Alsteen's examination, she told Mr.Matthews it wasn't necessary to refer him to an off-site advance care provider for a MRI.

3

17. Instead, Defendant Alsteen scheduled a nursing follw up three days later. see: Exhibit(a) and (b).

18. As scheduled, on the 23rd of December 2014, Mr.Matthews was examined by Defendant Bruckner.

19. Mr. Matthews complained to the Defendant Bruckner of seriousness of pain in his right leg. The ibuprofens weren't working against the pain, couldn't bear weight, had difficulty flex ing foot, and difficulty using crutches.

20. Mr. Matthews demanded that Defendant Bruckner refer him to an off-site doctor for a MRI. He was refused.

21. In Defendant Bruckner's nursing encounter protocol, she reported" right leg appears WNL, no edema in posterior calf and Achilles, but noted some mid-edema over lateral malleolus.

22. Defendant Bruckner diagnosed Plaintiff Matthews' injury as probable Achilles strain, advised him to continue with orders already in place but saw it fit to discontinue Mr.Matthews use of crutches. Mr.Matthews requested the crutches back and or a wheelchair se he could remain mobile and he was refused both.

23. Defendant Bruckner medically advised Mr.Matthews to avoid exertional activity until pain issue resolves.

24. Plaintiff, Mr Matthews walked around two months without crurches with a ruptured Achilles tendon. See: Exhibit (c).

25. On Feburary 25, 2015, Plaintiff Mr. Matthews went to HSU for an unrelated matter. There he complained of his Achilles injury and that his leg has not gotten any better as he was advised it would.

26. Defendant Bruckner noted swelling and other sign of injury warranting that Mr. Matthews shall be referred to an outside Medical Doctor for a MRI.

27. On March 13, 2015, Mr. Matthews was transported to St. Vincent Hospital for a MRI by Mehul Mehenedra Doshi MD.

29. It was determined that Mr. Matthews has a full thickness tear of the dital Achilles tendon. The proximal was retracted and there was gap approximately 5.5cm between the tendon gap region. See: Exhibit(d).

30. On april 15, 2015, Plaintiff Matthews had surgery on his Achilles tendon.

31. It has been noted that Plaintiff Matthews had suffered from a complete ruptured Achilles tendon for nearly three(3) months.

32. After Plaintiff Matthews surgery to repair the injury, he was housed in the mdeical unit to monitor recovery. While there, he began to experince swelling and pain to do to being moved from cell to cell, causeing stress to the injury.

33. On April 30, 2015, Plaintiff Matthews was placed on stair restriction.

34. Somehow, Plaintiff Matthews was removed from his no stair restriction.

35. On May 20, 2015, Plaintiff Matthews went to HSU upon medical order. It was noted that Plaintiff Matthews had re-ruptured his Achilles tendon due to climbing on the bed to close the window in his cell per a guards' order.

36. On June 2, 2015, Plaintiff Matthews was transported to St.Clare Memorial for a MRI.

37. On July 19, 2015, Plaintiff Matthews had surgery once again to repair the re-ruptured Achilles tendon, also required a donor tendon implant.

**38.** On May 20, 2015, after Plaintiff Matthews had re-ruptured his Achilles, medical had placed him in a TCTU cell.

**39.** Defendant Sgt. Wery had warned Plaintiff Matthews to stop talking out the door to the inmate in the next cell. Plaintiff got caught talking again to the inmate in the cell next door. Sgt.Wery retaliated by attempting to move Plaintiff Matthews to a medical cell to prevent him from talking out a cell door.

**40.** Plainiff Matthews demended to see the Doctor because Defendant Sgt.Wery had no order from any medical personnel to move him as he had just been diagnosed with a re-ruptured Achilles tendon.

**41.** In July of 2015, Plaintiff Matthews had complained of swelling and pain since restriction was discontinued both to stair and crutches by Defendant Dr.Sauvey.

**42.** Plaintiff Matthews had his second surgery and was placed back on no stair restriction, able to use the phone in the dorm where there are no stairs. He w as told he woild have to have teleconferance machines for visitation because of his no stair restriction and for unnessary reasons were being limited to only 1-2 visits a week.

**43.** To accommodate Plaintiff Matthews, he was later allowed to have visitation in the processing building, where there were no stairs.

**44.** Plaintiff Matthews filed a complaint venting the fact that he was only being allowed 1-2 visits even in the processing building when the handbook clearly states that general population inmates are allowed 4 visits per week.

6

45. On September 3, 2015, Plaintiff Matthews was called to HSU per medical doctor order.

46. At this time, HSU received a call from Corectional officer Segertrom, "Claiming" he seen Plaintiff Matthews walking to the recreation feild with a boot on. Note that Plaintiff Matthews was allowed to spectate at recreation.

47. Officer Bonnen" claimed" he had seen Plaintiff Matthews walking up the stairs connected to the recreation building.

48. As a result, Defendant Dr. Sauvey discontinued Plaintiff Matthews no stair and processing building restriction.

49. On September 11, 2015, Plaintiff Matthews was re-issued no stair and processing building orders.

50. In August 2015 it was presricbed that Plaintiff Matthews wear high top shoes to prevent re-injury of Achilles.

51. The shoe arrived at GreenBay Correctional Institution through the institution property room. Meanwhile, Defendant Captain Pusich interfered with allowing Plaintiff Matthews to have the high top shoe from Footlock. And the shoe was ultimately returned to Footlock.

52. It was reviewed and determined Plaintiff Matthews be prescribed shoes with a lift heel in them. A medical shoe was never received from HSU.

53. Again on October 15, 2015, Plaintiff Matthews was having a visit in the processing building and it was discontinued because an unidentified officer reported that they had " claimed to have seen" Plaintiff Matthews walking up stairs to recreation.

54. In the mist of all that had transpired, Plaintiff Matthews filed an inmate complaint again siting the inadequate medical care he had been receiving.

55. Plaintiff Matthews had not received any reply from either process of the inmate complaint system. Therefore, as proof, Plaintiff Matthews filed a complaint where it states evidence that Plaintiff Matthews complained about his medical care. See: Exhibit(f).

## 2. PROPOSED AMENDED COMPLAINT.

56. The Plaintiff Matthew has been incarcerated at GBCI for nine(9) years. Some duration of this nine(9)years there has been allegation, of Mr.Matthews smuggling drugs into the institution, through the visiting room.

57. Plaintiff Matthews in these nine years never tested positive for any drugs from an urinalsis. Nor throughout the emerging og these allegation was Plaintiff Matthews visitation priviledges restricted, until now.

58. After every visitation, inmates are strip search. Not at all were there any drugs cinfiscated from Plaintiff Matthews. This is throughout the entire nine years of Plaintiff Matthews being at GBCI.

59. Suddenly, when Plaintiff Matthews filed this civil suit against the medical personnel and correctional staff, then did security staff commence to retailate against Plaintiff Matthews.

60. On a Sunday nearly two weeks before filing this suit Plaintiff Matthews was gathering information and filing inmate complaints in relation to this civil suit. Staff and medical personnel somehow took notice.

61. Plaintiff Matthews had returned from a visit. While reporting back to his housing unit, Defendant Lt. Sweikatoski was stationed at the officer's deck. Said defendant accused the plaintiff of passing contraband to another inmate.

62. Plaintiff Matthews was then placed in hand cuff which is not a normal procedure. The plaintiff was then escorted out and strip searched. No contraband was found , nor did Defendant Sweikayoski strip search the other inmate who the Plaintiff supposed to had pass something off to.

63. Next the Plaintiff's bunk #47 was searched upon defendant Sweikatoski orders. At the bunk no contraband was found.

64. On or about Feburary 11, 2016, the plaintiff was again returing from a visit. Plaintiff Matthews was strip searched per Defendant Capt. Stevens orders No contraband was located.

65. Next the Plaintiff bunk was searched by Sgt. Richie per Defendant's orders. At this time it was decided the Pliantiff's canteen items be confiscated. As a result Plaintiff Matthews received a conduct report, where the plaintiff was given loss of canteen for 16 days.

66. On Feburary 16,the Plaintiff had received a memo from social service , informing that Tanya Griswold gad been removed from the Plaintiff's approved visiting list.

67. Prior to filing the civil suit Ms.Gridwold remained on the Plaintiff's visiting list with a warrant.

 �ç⁣ː ⁣.

68. On March 6th, 2016, the Plaintiff was called to report to the visiting room, as awaiting a visit from his wife. Once arrived at the visiting room did thePlaintiff learn his contact visit were restricted, as of March 3, 2016.

69. The plaintiff dud not receive a copy of the memo until March 8th, 2016. Appearantly the Front Gate officer got a copy of the notice to not allow the Plaintiff's wife in the contact visit area. According to the notice copies were sent to: Mr.Eckstin, Mr.Kind and other departments.see: Exhibit(e).

70. On March 8th, 2016, SGT.Kent was working in the Dorm living area he was doing mail pass, when he signed the Plaintiff's memo, that notified the Plaintiff his contact visits were being restricted pending an investigation.

**THE DEFENDANTS ADDED.**

71. Defendant, Lt. Sweikatoski is and was at all times ranked as a lieutenant at GBCI during the time of incident of retailation.

72. Defendant, Capt. Stevens is and was at all times ranked as a Captain at GBCI during thetime of this incident of retailation.

73. Defendant John Kind was not employed at GBCI during the medical incident, but was in fact ranked as the Security Director during the time of retailation.

74. Defendant Scott Eckstein was not the Warden at the time of sai incident, but was Warden during the time of incident of retailation.

75. Defendant Maxim Physician Resources, 5001 Lyon B Johnson, Fwy #900 Dallas  75244. This private company was at all times the contractors who employeed Defendant Bruckner.

## V. EXHAUSTION OF LEGAL REMEDIES

76. Plaintiff Matthews used the inmate grievance procedure available at Geenbay Correctional Institution to try and resolve the problem. Plaintiff Matthews presented the facts relating to this complaint. Plaintiff Matthews filed# 2015-9414, but never received any response from The ICE department acknowledging whether Plaintiff Matthews complaint was accepted or denied. So plaintiff Matthews proceeded to the next step on the complaint process, with filing,# GBCI- 2015-17770, any response failed to be received by the plaintiff. Following Plaintiff Matthews then filed a complaint # GBCI-2015-21075.

## VI. LEGAL CLAIMS

### Deliberate Indifference

The standard for " deliberate Indiffernce" in medical care cases is the same two-part standard objective and subjective.

To prove deliberate indiffernce, you must show that(1) prison officials knew about your serious medical need and(2) the prison officals failed to respond reasonably to it. See: Estelle, 429 U.S. at 104; Gutierrez v. Peters, 111 F.3d 1364,1369(7th cir.1997).

77. Plaintiff Matthews alleges again and incorporates by reference paragraphs  1-55.

78. Defendant Altseen was deliberately indifferent towards Plaintiff Matthews serious medical need. Plaintiff Matthews reported he felt a"pop" in his lower leg, followed by severe pain. Plaintiff Matthews also reported swelling near the postior ankle.

79. Despite Plaintiff Matthews reporting of pain and swelling over Achilles area, Defendant Alsteen failed to record in her progress notes accurately Plaintiff's reporting as was in Burke v. Teasdale, 492 F.sup.650,676(W.B. MO.1980) accord, Morales Feliciano v. Calderon Serra, 300 F.supp. 2d 321, 341,(D.P.R. 2004).,( record keeping and management are rcitically important to the continuity of medical care. Otherwise, the possibilty for disaster is created).

80. Defendant Alsteen did report"some" description of injury but minimized in the problem location there was zero swelling, zero bruising but calf tenderness.

81. Plainiff Matthews had all the"classic" symptoms of a ruptured Achilles, which required immediate medical attention. A MRI to dertermined the extent of the damage. Defendant Alsteen failed to refer Plaintiff Matthews to medical personnel qualified to exercise judgment to injury accordingly.

82. Defendant Alsteen had the discertion to refer Plaintiff Matthews to an off-site care provider. Instead, she scheduled Plaintiff a nurse follow up, because she felt an MRI was not needed and informed Plaintiff Matthews the injury will heal.

83. Defendant Alsteen violated Plaintiff Matthews' right under the Eighth Amendment to the United State Constitution, thus causing Plaintiff Matthews unwarranted pain and suffing.

84. Defendant Bruckner denied Plaintiff Matthews adequate medical care, as she was deliberately indifferent towards Plaintiff Matthews serious medical need.

85. It had been three(3) days since Plaintiff Matthews injury. It was noted that Plaintiff Matthews Achilles injury had gotten worse.

86. Plaintiff Matthews complained to Defendant Bruckner, which she too minimized the reporting injury, claiming there was no swelling in Plaintiff Matthews leg. Clearly Plaintiff Matthews could see swelling. Again, the recording keeping and managements are critically important to continuity of medical... Morales Felicious V. Calderson Sierra 300 F.2d 321,341.

87. Defendant Bruckner diagnosed Plaintiff Matthews injury as probably Achilles...in return, discontinued Plaintiff Matthews crutches, leaving him without mobility to get around the institution.

88. Defendant Bruckner advised Plaintiff Matthews his injury will heal and to continue to follow orders prescibed prior. For two(2) months Plaintiff Matthews walked with a ruptured Achilles. When Plaintiff Matthews demanded a MRI it was denied. See: Hemmings v. Gorczyk, 134 F.3d 104,109(2d cir1998). Over two months it was refused to Plaintiff Matthews who had "classic" symptom of a ruptured tendon to a specialist, could constitute deliberate indifference.

89. Defendant Bruckner in fact violated Plaintiff Matthews right under the Eighth Amendment of the United States Constitution, causing unwarranted pain and suffering.

90. Defendant Dr. Sauvey had no right as a medical personnnel to discontinue Plaintiff Matthews prescricbed orders (from attending surgeon) as it put Plaintiff Matthews in position of pain and suffering. Just because Plaintiff Matthews was observed walking stairs doesn't amount to punish a patient by inflicting pain. See: Walker v. Benjamin 293 f.3d 1030-40(7th cir. 2002). Defendant Sauvey violated Plaintiff Matthews right under the Eighth Amendment of the United States Constitution, causing unwarranted pain and suffering.

PROPOSED LEGAL CLAIM.

## MEDICAL MALPRACTICE

The factors to be considered for medical malpractice:
(1). the state claim raise a novel or complex issue of state law, see: <u>Key V. Grayson</u>, 163 F.supp.2d 697,705 (E.M. 2002).(2) the state claim substantially predominate over the federal claim or claim over which the district court had original jurisdiction,(3), the district court has dismissed all federal claims over which it original jurisdiction, see: <u>Parker v. Scrap Metal Processor, INc</u>. 468 F.3d 733,743-47 ( 11th Cir. 2007).

Where as , claims for malpractice and medical negligence that occur while Plaintiff is the state or local custody can be brought in this court. see: <u>Benman V. U.S.</u> 205 F.supp. 2d 362.( M.D. Pa. 2002). also see: <u>Little v. Tall</u> 195 F.supp.199, 201,(D.Me. 2002). complying with statute requirement.

The court in Virigina Supreme Court has held that a prisoner could sue a prison medical provider for inadequate medical care that also did not satisfy the terms of the contract between the provider and the state. see: <u>Ogunda V. Prison Health Service, Inc.</u> 645 S.E. 2d 520,526(2007).accord, <u>Miller v. Correction Corp. Of America</u>, 239 fed.appx.396,397 ( 9th Cir.2007).

Defendant Bruckner was at the time contracted to provide health care at GBCI, as Maxim Physician Resource, the Contractors in this matter are also a Defendant breached the contract.

Defendant Bruckner misdiagnosed Plaintiff Matthews Achilles tendon injury as a strain.Thus, as a result left the plaintiff walking around for months with a ruptured Achilles injury.

14

This claim could had been raised in state tort, the statute to support is § 1975 WRL 838.see: Strykowi v. Wilkie , 81 Wis. 2d 491, 261 N.W. 2d 434(1978). Meanwhile section 28 U.S.C. § 1376,allows said Malpractice claim to be presented here.

Defendant Bruckner caused injury by failing " to have and used the Knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing. see; Chambers v. Ingram , 858 F.2d 351, 355(7th Cir.1988). Defendant Bruckner did not utilize ordinary knowledge, skill, and care both in diagnoses and in treatment. Defendant Bruckner shall had knew considering the "classic signs" of a ruptured Achilles tendon, the only why to properly diagnose such injury accordimgly is by a MRI. Because such knowledge was looked aside, had a MRI been conducted then the Plaintiff would not have walked with an Achilles injury for three months.

Because The Plaintiff is a third-party beneficiary, the contractor and the one contracted to carry-out a duty is liable.

### RETALIATION

The right to be free from re taliation for using the court system Prison official may not retaliate against prisoner for using the court or trying to do so. see: Siggers - El v. Barlow 412 F.3d 693 (6th Cir. 2005).

A retaliation claim essentially entails three element:(1) the plaintiff engaged in protected conduct;(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causel connection between elements one and two that is the adverse action was motivated at least in part the Plaintiff's protected conduct. see: Thaddeus-X v. Blatter, 175 F.3d 378, 394 (5th Cir.1999)(enbanc).

15

The retaliation action in this claim is enough to defer a" person of ordinary firmness " from excrisesing First Amendment right"

Plaintiff Matthews has been incarcerated at GreenBay prison for nine(9) years, throughout the entire time, security has been accusing the Plaintiff of smuggling drugs into the institution. Which security had been investigating for some time, and they "never" confiscated any drugs from the plaintiff at any time during his stay. Nor was the Plaintiff's contact visits restricted.

However, not until this civil suit did secuity use the " drug smuggling" allegation as a means to retaliate against the plaintiff. This is the justified reason said defendants conspired, to retaliate. see: Peterson v. Shanks, 149 F.3d 1140,1144(10 Cir.1998).

This investigation suppose to have been going on for a period of time, but why all of a sudden, at the time of filing this civil suit did the Defendant John Kind take the Plaintiff contact visitation, wher and when nothing at all was find to indicate, the plaintiff was in any right. see: Hasnan v. U.S. Dept. of Labor, 400 F.3d 1001, 1006(7th Cir.2005).

Plaintiff Matthews had over the allowed amount of Canteen, when Defendant Stevens ordered a bunk search, as a result the Plaintiff recieved 14 day loss of canteen. Here it is how when Defendant Sweilakoski had the bunk search no items was taken even though the Plaintiff had the same amount on that day also. see: Allen v. Thomas 388 F.3d 147, 150(5th cir. 2004). ( confiscating property).

The matter regarding removal of Ms. Griswold from the Plaintiff's visi ting list was not a normal pratice for the social service department to sheerdized inmate visiting list. Unless its a cause via, an inmate adding or removing a visitor.

The retaliation continued, defendant Kind restricted the plaintiff's contact visit. See: Craeford-El Britton 523 U.S. 574, 588 n.10 118 S.Ct. 1584(1998).

## CONCLUSION

As a result of it all, Plaintiff Matthews had suffered a complete rupture Achilles tendon for nearly three(3) months before off-site sugery. Medical personnel at GreenBay Correction inflicted hardship upon Plaintiff Matthews were they supposed to had been a" Gate-keeper". Plaintiff Matthews is now with permanent deformity; he walk with a limp.

Had Plaintiff Matthews had medical attention on time it would had greatly increased his chances of success of not being or having a lifetime deformity.

Also no plaintiff desevre to be retaliated against. The allegation of drug smuggling was just an excuse for the plaintiff to be put to hardship.

17

## PRAYER OF RELIEF

WHEREFORE, Plaintiff Matthews, respectfully prays that this court enter judgment:

Granting Plaintiff Matthews, declaration that the acts and ommissions described herein violate his right under the Constitution and Laws of the United States, and

A permanent injuction ordering tranfer to a different prison for fear of reteliation, for filing this complaint against said defendants herein.

Plaintiff Matthews seeks permanent injunction ordering HSU to provide Plaintiff Matthews with medical shoe with lift heel as ordered, to protect Achilles area from further injury.

Plaintiff Matthews herein seeks compensatory damages of $ 300,000 against Defendant Altseen and $ 750,000, against Defendant Bruckner, the legislatures futher find that limitation of this amount represent an appropriate balance between providing reasonable compensation for noneconomic damages associated with medical malpractice. , in respects to wis.stat. 873.55(b). This is asked for as Plaintiff Matthews now permanently suffer from alifelong disability, hindering Plaintiff Matthews chances of being employed at a job that requires long hours of standing and walking as Plaintiff now has a permanent limp.

Plaintiff Matthews seeks punitive damages in the amount $ 150,000, as pain was afflicted on him as Defendant Dr. Suavey removed Plaintiff Matthews medical restriction on several occasions while the attending surgeon had specific restrictions written.

Plaintiff Matthews herein seeks compensatory damages in the amount of $ 150,000, against Defendant Lutsey. Defendant Lutsey is and was at all times the Health Service Manager, liable for Defendant's Altseen and Bruckner inadequate medical care.

Plaintiff Matthews also seeks punitive damages against Defendant SGt. Wery as she treated Plaintiff Matthews injury in a means to retaliate in order to remove Plaintiff Matthews from a cell. Seeking damages in the amount of $ 10,000.

Plaintiff Matthews also seeks punitive damages against Defendant Captain Pusich in the amount of $ 10,000 for interfering with medical orders over institution policy.

Plaintiff Matthews seeks punitive damages against the following defendants: Scott Eckstein,$3,500, John Kind, $3,000, Lt.Swiekatowski, $ 1,500 and Sgt.Stevens in the amount of $ 1,500. All these said defendants act togather in reteliating against the Plaintiff.

In the sum total of $1,379,500.

Plaintiff Matthews also seeks a jury trial on all issues triable by jury. Plaintiff Matthews also seeks recovery of the cost in the suit, and any additional relief this court deems just, proper and equitable.

Dated: 03/22/16 2016
Respectfully submitted,

_____
Walter G. Matthews
GreenBay Correctional Institution
PO Box 19033
GreenBay, WI 54307

## VERIFICATION

I HAVE READ the foregoing complaint, and hereby verify that the matters alleged therein are true, except as to matter alleged on information and belief, and asto those, I beleive them to be true. I certify under penalty of perjury that the foregoing is true and correct.Plaintiff asks this court to hold his complaint] to less strictrue considered from a pro se litigate.

Executed at GreenBay, Wisconsin on 03-22- 2016
Plaintiff _____